Russell B. JEFFREY, Respondent,

v.

Raymond COLLEY, Appellant.

No. 22897.

Kansas City Court of Appeals.

Missouri.

April 6, 1959.

Don C. Carter, Sturgeon, Arthur M. O'Keefe, Moberly, for appellant.

C. M. Hulen, C. M. Hulen, Jr., Moberly, for respondent.

SPERRY, Commissioner.

Plaintiff, Russell B. Jeffrey, sued defendant, Raymond Colley, for damages to plaintiff's caterpillar tractor, brought about by the acts of one Kent Mayo, alleged to have been the agent and servant of defendant. From a judgment in favor of plaintiff in the amount of $900, defendant has appealed.

Plaintiff was engaged in building a road running from Thomasville, Missouri, to a point near Darksville. He owned, and used in building this road, an Allis-Chalmers "Cat". This piece of equipment had been left, by plaintiff, parked on a road bank of the highway being constructed.

Defendant was engaged in the general trucking business and owned tractors and trailers used in that business. R. L. Teeters was also engaged in the trucking business and owned equipment which was used in the business. Both defendant and Teeters operated in the general area of Moberly, Darksville, and Clifton Hill.

Teeters had been employed to haul a trailer load of wheat to Kansas City. The wheat was in Teeters' trailer, on a farm near Darksville. He met defendant at Reeds corner and asked him if he would send a tractor and driver to pick up the trailer load of wheat and drive it to Teeters' place of business at Clifton Hill. Defendant agreed to do so.

The evidence most favorable to plaintiff is to the effect that defendant instructed one of his employees, Kent Mayo, to take defendant's tractor and pull Teeters' trailer to Clifton Hill. Mayo had been in defendant's employ for a period of three months and was paid at the rate of $55 per week, whether or not he made any "runs".

Mayo took defendant's tractor, hitched onto the trailer load of wheat, and started driving toward Clifton Hill. Near Muncas Creek the tractor-trailer got stuck. He saw plaintiff's "Cat" on the other side of the creek, where it had been left, started it up and attempted to back it across the creek, intending to use it to pull the tractor-trailer out, but the "Cat" got stuck in the creek. Being unable to free it, he went to a nearby farm house and attempted to call both defendant and Teeters. He could not get the operator and then went to Clifton Hill, where he informed Teeters of the situation. He then went to his home in Clifton Hill and, later, that same night, he drove a tractor-trailer to St. Louis for defendant, on defendant's business. He was never paid anything by Teeters, nor did he at any time expect to be paid by him.

Teeters went out to the tractor-trailer that night but was unable to get the "Cat" out of the creek. During the night the creek flooded and covered the "Cat" with water, causing a great deal of damage. Neither plaintiff nor defendant knew the "Cat" had been used or that it was damaged until after the damage was done.

It was shown that a custom existed in the trucking business in that vicinity whereby each person engaged in the business would, in emergencies or when there was a need, furnish equipment and services to another upon request; that, sometimes, the owner of the equipment and services furnished was reimbursed by cash but more often he was repaid in kind and no accounts were kept. In this case, Teeters never paid defendant or Mayo any cash, but he loaned defendant a tractor for a trip to St. Louis that same night. Teeters did not expect to pay for the use of the tractor and driver but expected to furnish defendant similar services from time to time, as was the custom. It was also customary for the hired driver of a truck, if the equipment got stalled for any reason and he could not get it moving on its own power, to use whatever means or instrumentality that might be near at hand, or to call whatever assistance there was available, in order to get it mov-

-ing. He called his employer only if he was nearer or more available than someone else.

Defendant presents one point: "The verdict is against the evidence because Kent Mayo was not the servant and agent of the appellant, Colley, when Mayo drove the tractor of the respondent into the creek."

■■ "A servant may be loaned or hired by his master for some special purpose so as to become, as to that service, the servant of the person to whom he is loaned or hired, and to impose on the latter the usual liabilities of a master, the general or original master being correspondingly relieved." 57 C.J.S. Master and Servant § 566, pp. 284, 285. The usual test of liability for the acts of a servant loaned to another is whether he continues *liable* to the direction and control of his original master or becomes subject to the direction and control of the person to whom he is loaned or hired. But it is difficult to determine what is meant by "control". In the final analysis each case must be determined in the light of the existing facts and circumstances. The fact that the servant is using the machinery or appliance of his general employer, particularly if it is of considerable value, indicates a continuation of service under his general employer; but the test of liability is the *possession* of control over the servant. 57 C.J.S. Master and Servant § 566, pp. 286–291. The decisions are said to be irreconcilable. Each case must be determined in the light of the facts and circumstance in evidence in that case.

■ Here, Mayo was in the general employ of defendant, who told him to take defendant's tractor and pull Teeters' trailer from a certain place to another place. Mayo was paid a weekly wage whether or not he made a "run." It was the custom for defendant and Teeters to loan each other men and equipment upon request, and no money accounting was had. They worked with each other and each helped the other as needed. The consideration that each received was aid from the other when need-ed. Therefore, Mayo was engaged in the business of defendant in helping Teeters on this occasion. It appears, generally, that Mayo considered himself as in the continued employment of defendant. He did not expect pay from Teeters, and he used defendant's tractor. That night he drove Teeters' tractor to St. Louis on defendant's business. In using plaintiff's "Cat" he was doing what was customary in the business, availing himself of the nearest instrumentality at hand in order to extricate his master's truck from its stalled condition and to perform the mission that his master had sent him to do.

"It is a doctrine as old as the Bible itself, and the common law of the land follows it, that a man cannot serve two masters at the same time; he will obey the one, and betray the other; * * * 'he cannot be subject to two controlling powers which may at the same time be divergent.' * * * To escape liability the original master *must surrender full control of the servant in the performance of said work*." McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 153 S.W.2d 67, 69–70–71, 136 A.L.R. 516.

Two tests often applied are: who had the right of control? and whose business is being done? Here, the business being done was, in fact, that of defendant. By custom and usage, because such practices furthered his own business, he furnished machinery and equipment to Teeters when Teeters needed it and expected Teeters to reciprocate when defendant was in need. He furnished his own truck, a valuable piece of equipment. Teeters had no interest in the exact manner in which the work was done. He only wanted the trailer moved to his place of business and the evidence is to the effect that Mayo knew where the trailer was located, the roads to follow, and how to proceed to get it to its destination. It was a comparatively simple job and of brief duration, requiring no direction or supervision by Teeters; and none was given. Under the facts and circumstances shown in this case, Mayo

was the servant of defendant at the time the "Cat" was damaged.

The judgment should be affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.